**Case No. 2024-1460**

---

**IN THE**
**UNITED STATED COURT OF APPEALS**
**FOR THE FEDERAL CIRCUIT**

-------------------------------------------------

**FUENTE MARKETING LTD.,**
*Appellant*

**v.**

**VAPOROUS TECHNOLOGIES, LLC,**
*Appellee*

-------------------------------------------------

**Appeal from the US Patent & Trademark Office**
**Trademark Trial and Appeal Board**
**Opposition No. 91270800**

-------------------------------------------------

# NONCONFIDENTIAL SECOND CORRECTED PRINCIPAL BRIEF FOR APPELLEE VAPOROUS TECHNOLOGIES, LLC

-------------------------------------------------

Glen L Nuttall
FisherBroyles, LLP
145 S Fairfax Ave. Suite 200
Los Angeles, CA 90036
(949) 584-2774

*Attorney for Appellee*
*Vaporous Technologies, LLC*

---

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 24-1460

**Short Case Caption** Fuente Marketing Ltd. v. Vaporous Technologies, LLC

**Filing Party/Entity** Vaporous Technologies, LLC

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.
2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.
3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.
4. Please do not duplicate entries within Section 5.
5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 10/28/2024

Signature: /s/ Glen L Nuttall

Name: Glen L Nuttall

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| Vaporous Technologies, LLC | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below) ☑ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

**Table of Contents**

**I. STATEMENT OF RELATED CASES** .................................................... 1

**II. INTRODUCTION** .......................................................................... 1

**III. SUMMARY OF ARGUMENT** .......................................................... 5

**IV. ARGUMENT** .................................................................................. 8

**A. Standard of Review** ..................................................................... 8

**B.** ................. **SUBSTANTIAL EVIDENCE SUPPORTS THE BOARD'S FACTUAL CONCLUSION THAT VAPOROUS'S DAB MAN MARK "IS A STICK FIGURE" AND THAT IT IS DIFFERENT VISUALLY AND IN CONNOTATION AND COMMERCIAL IMPRESSION FROM THE LETTER X** ........................................................................... 9

**1.**...... **Fuente, Vaporous, and the Board All Agree That The Dab Man Mark "Is a Stick Figure"** ............................................................. 9

**2.**.. **Fairness Requires That Fuente Be Held To Its Factual Stipulation** 10

**3.**....**Indisputable Facts Provide Substantial Evidence Supporting The Board's Factual Determination That The Dab Man Mark and Fuente's X Are Dissimilar** ........................................................................ 11

**4. Fuente Has Presented No Evidence To Rebut The Board's Factual Finding That The Dab Man Mark "Is A Stick Figure" Or That It Is Different Visually And In Connotation And Commercial Impression From The Letter X**.......12

**a) ..... Fuente's Contentions About Hidden Meanings Both Offends Case Law And Admits Confusion Is Unlikely** .......12

**b) .... No Record Evidence Subverts The Board's Finding That The Dab Man Mark "Is A Stick Figure"** .......15

**5. THE BOARD CORRECTLY HELD "A STICK FIGURE HAS NO PRONUNCIATION"**.......16

**6. Substantial Evidence Supports the Board's Factual Determination That the Dab Man Mark Differed From the Letter X Visually, in Sound, in Connotation and in Commercial Impression.** .......17

**C. FUENTE'S OWN EVIDENCE AND ARGUMENTS DEMONSTRATE THAT ANY PRESUMPTION THAT THE GOODS TRAVEL IN OVERLAPPING TRADE CHANNELS TO OVERLAPPING CONSUMERS DOES NOT REFLECT REALITY** .......17

**D. SUBSTANTIAL EVIDENCE SUPPORTS THE BOARD'S CONCLUSION THAT FUENTE'S STANDARD CHARACTER X MARK**

**IS NOT VERY STRONG** .......... 20

**1. The Board Correctly Found That Since Fuente Has Only Sparsely Used an X Alone, The Letter X Does Not Function As An Effective Source Indicator For Fuente** .......... 20

**2. Any Strength Arguably Attributable To Being Arbitrary Is Mooted By The Board's Finding That The X Mark Does Not Function As An Indicator Of Source** .......... 23

**3. Ten Years of Coexistence In the Market With Other X Marks Without Any Confusion Suggests That Fuente's X Mark is Weak** .......... 23

**E. THE BOARD CORRECTLY WEIGHED THE DUPONT FACTORS TO FIND NO LIKELIHOOD OF CONFUSION** .......... 27

**F. FUENTE HAS NOT SATISFIED ITS BURDEN TO PROVE LIKELIHOOD OF CONFUSION** .......... 29

**V. CONCLUSION** .......... 30

**Confidential Material Omitted**

A portion of a sentence on page 23 of this document has been omitted/redacted. The omitted text describes certain specific confidential contract terms that had been marked confidential by Fuente.

## Table of Authorities

**Cases**

*American Bead Co. v. United States*, 7 Ct. Cust. 161 (Court of Customs Appeals, 5/23/1916)....................10

*Becton Dickinson & Co. v. C.R. Bard, Inc.*, 922 F.2d 792 (Fed. Cir. 1990)....................3

*Bongrain Int'l (American) Corp. v. Delice de France, Inc.*, 811 F.2d 1479 (Fed. Cir. 1987)....................18

*Champagne Louis Roederer, S.A. v. Delicato Vineyards*, 148 F.3d 1373 (Fed. Cir. 1998)....................28

*Consolidated Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197 (1938)....................8, 11

*Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607 (1966)....................8, 12

*Cunningham v. Laser Golf Corp.*, 222 F.3d 943 (Fed. Cir. 2000) .................... 9, 19, 30

*Hylete LLC v. Hybrid Athletics, LLC*, 931 F.3d 1170 (Fed. Cir. 2019) .................... 8, 9, 11

*In re White Swan Ltd.*, 8 USPQ2d 1534 (TTAB 1988)....................13

*Joel Gott Wines LLC v. Rehoboth Von Gott Inc.*, 107 USPQ2d 1424 (TTAB 2013) ....................14

*Juice Generation, Inc. v. GS Enters. LLC*, 794 F.3d 1334 (Fed. Cir. 2015)....................26

*Kellogg Co. v. Pack'Em Enters., Inc.*, 951 F.2d 330 (Fed. Cir. 1991)....................28

*Nike Inc. v. WNBA Enterprises, LLC*, 85 USPQ2d 1187 (TTAB 2007)....................16

*Palm Bay Imps., Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396

F.3d 1369 (Fed. Cir. 2005) ....................................................................27

*Ring & Pinion Serv. Inc. v. ARB Corp. Ltd.*, 743 F3d 831 (Fed Cir 2014)............10

**Other Authorities**

2 Gilson on Trademarks § 8.05 (2024) ..............................................................8, 12

2 Moore's Manual--Federal Practice and Procedure § 18.05 (2024).......................10

3 Gilson on Trademarks § 9.04 (2024) ..............................................................8, 11

4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 23:79 (5th ed. 2023)..........................................................................................28

## I. STATEMENT OF RELATED CASES

No appeal in or from the proceeding below was previously before this or any other appellate court. Counsel for Appellee Vaporous Technologies, LLC is not aware of any case pending in this or any other tribunal that will affect or be directly affected by this Court's decision in this appeal.

## II. INTRODUCTION

Vaporous uses its "Dab Man" Mark ( ) in connection with oral vaporizers for smoking purposes. (Appx48). Fuente, Vaporous, and the Board all agree that the Dab Man mark "is a stick figure". (Appx44; 133)[1]. After the Dab Man mark was examined and approved for publication by the US Patent & Trademark office, Fuente filed an opposition contending that there was a likelihood of confusion between the Dab Man mark and several registrations owned by Fuente for words and logos incorporating the letter X used in connection with cigars. The Board dismissed the opposition, finding that there was no likelihood of confusion between The Dab

---

[1] More precisely, Vaporous and Fuente stipulated that the Dab Man mark "consists of an abstract stick figure consisting of two diagonal intersecting lines in the shape of a wide stylized letter'X' and a shaded circle above the letter 'X'". (Appx44, 133).

Man mark and any of Fuente's asserted marks (Appx47). This appeal followed.

As discussed extensively in Fuente's brief, Fuente makes a celebrated cigar that it markets under the mark FUENTE FUENTE OPUS X and other word marks that incorporate the letter X. The OPUS X cigars also feature a distinctive cigar band. Notably, after reviewing the evidence and arguments, the Board held, "we do not find an 'X Design'". (Appx13). Rather, the cigar band of the OPUS X cigars featured what the Board termed an "XFF design comprising two letter Fs against ornate crossed lines in a letter X" (Appx13). Presented below are representations of variations of the XFF design adjacent Vaporous's Dab Man mark.

| Stylized XFF | Stylized FUENTE OPUS X/FUENTE OPUS X FF<br>Stylized FUENTE FORBIDDEN X | DAB MAN |
|---|---|---|
|  | <br> |  |

(Appx48, 56, 57, 64, 68, 1189).

Vaporous's oral vaporizers are electric powered devices that heat an herbal concentrate sufficiently so that it is atomized. This atomized concentrate is mixed with intake air to form a vapor that is inhaled by a user. There is no flame, no combustion, no smoke, and no ash. (Appx838) Cigars, on the other hand, are lit with a flame and combust tobacco leaves to generate smoke and ash. (Appx1260; 2624). Fuente does not sell vaporizers and Vaporous does not sell cigars.

At trial, Fuente argued that its many asserted registrations were part of a family of "X Marks". However, the Board specifically found that Fuente had no family of marks. (Appx23). Fuente has not appealed this factual conclusion or the factual conclusion above that there is no "X Design" (Appx13). Fuente has not appealed these factual conclusions, and thus they must now be accepted as fact. *Becton Dickinson & Co. v. C.R. Bard, Inc.*, 922 F.2d 792, 800 (Fed. Cir. 1990)("An issue not raised by an appellant in its opening brief . . . is waived.").

After dismissing consideration of Fuente's many word mark registrations and XFF design registrations, the Board addressed likelihood of confusion with respect only to Fuente's standard-character X marks (Appx24). The Board further narrowed its analysis to Fuente's Reg. No. 3254146 for a standard character X in connection with "cigars". (Appx29). Fuente has not challenged or appealed this conclusion. Thus, the only question for this appeal is whether the Board's holding that

Vaporous's Dab Man mark is not likely to be confused with Fuente's standard character X mark for cigars was correct.

As will be discussed in more detail below, the Board agreed with Fuente and Vaporous that "Applicant's mark is a stick figure." (Appx44), and as a stick figure representation of a human being, the Dab Man differed from the letter X "visually, and in connotation, and commercial impression." (Appx44). The Board further found, "A stick figure has no pronunciation, and so does not sound like the letter X." (Appx44). Based on the evidentiary record, which provides substantial evidence supporting its factual determinations, the Board found that "consumers would not perceive Applicant's design mark as a letter X, but as a stick figure. The dissimilarity between the marks weighs against finding a likelihood of confusion." (Appx46). After weighing the *DuPont* factors the Board concluded "the marks create different commercial impressions, and the dissimilarity of the marks weighs against a likelihood of confusion." (Appx46). Thus, the Board dismissed the opposition.

Vaporous submits that all of the conclusions of fact made by the Board are supported by substantial evidence, and must not be disturbed. Similarly, Vaporous submits that the Board correctly weighed the *DuPont* factors to determine there was no likelihood of confusion between Vaporous's Dab Man mark and Fuente's letter X.

## III. SUMMARY OF ARGUMENT

The Board made numerous factual determinations that are supported by substantial evidence, and must not be disturbed by this Court. These factual determinations were appropriately weighed by the Board in evaluating the duPont factors to determine that there would be no likelihood of confusion between Fuente's and Vaporous's marks

The Board determined that Vaporous's graphical Dab Man mark ( ) "is a stick figure." This factual determination is based on and supported by Fuente's stipulation the Dab Man mark "consists of an abstract stick figure . . . ." Well-established precedent, and fairness, requires that Fuente be held to its factual stipulation, which expressly supports the Board's factual determination that the mark "is a stick figure"

Based on the evidence of record, the Board made other factual determinations that are supported by substantial evidence. These include:

- "consumers would not perceive Applicant's design mark as a letter X, but as a stick figure". (Appx46).
- Dab Man differed from the letter X "visually, and in connotation, and commercial impression." (Appx44)
- "A stick figure has no pronunciation, and so does not sound like the letter X." (Appx44).

- "The dissimilarity between the marks weighs against finding a likelihood of confusion." (Appx.46)
- Fuente's own evidence "includes only a handful of examples of X used alone". (Appx420).
- "we do not find that a significant portion of the relevant consuming public recognizes the mark X as a source indicator for Opposer. Opposer's registered mark X is neither very weak nor very strong". (Appx42).

As will be discussed in more detail throughout this brief, each of these factual determinations are supported by substantial evidence, and must not be disturbed.

Since it is an indisputable stipulated fact that the Dab Man mark "is a stick figure" (Appx44), any depiction of an X in the Dab Man mark is subordinate to the overall stick figure design. The Board thus was correct to conclude, "A stick figure has no pronunciation, and so does not sound like the letter X." (Appx44).

Fuente's brief presents much evidence and discussion about its expensive, super-premium cigars that are highly sought after by sophisticated cigar enthusiasts. However, its cigars are only marketed under marks such as FUENTE FUENTE OPUS X, OPUS X, other word marks and the XFF design – none of which depict the letter X being used alone. Fuente's own evidence and brief present, at best, little or no examples of X used alone with cigars. Since, as determined by the Board,

Fuente's X mark is not recognized by consumers as a source indicator for Fuente, the X mark cannot be considered strong.

The Board DID err in discounting Vaporous's evidence that X-based marks in the oral vaporizer space have coexisted with Fuente's mark. Evidence of record shows that a third party has been prominently using the mark with electric vaporizers for over 10 years without any customer confusion and with Fuente's blessing. The Board was mistaken to ignore this evidence, which supports a conclusion that Fuente's X mark is weak and entitled to only narrow protection.

In view of Fuente's extensive discussion of its super-premium cigars promoted to sophisticated cigar aficionados, it is clear that Fuente's cigars are marketed through only high end outlets to high-end consumers. Any legal presumption that Vaporous's and Fuente's goods travel in similar markets doesn't reflect reality. Thus, even if a presumption to that effect must be made, sound logic requires that such presumption must carry little or no weight when balancing duPont factors.

Fuente objects to the prominence and importance of the dissimilarity of the marks factor in the Board's weighing of the duPont factors. However, well established case law supports that consideration of different commercial impressions and dissimilarity of marks can appropriately be dispositive.

Since each of the Board's factual determinations is well supported by substantial evidence, they must not be disturbed by this Court. Also, sound law and logic support the conclusion that this dissimilarity between the marks dispositively demonstrates that there is no likelihood of confusion between the Dab Man mark and Fuente's X Mark. The Board's dismissal of the Opposition should be affirmed.

## IV. ARGUMENT

### A. Standard of Review

With regard to the Board's factual conclusions, "The TTAB's findings of fact will be reviewed by the Federal Circuit to determine if there is 'substantial evidence' to support the Board's conclusions." 3 Gilson on Trademarks § 9.04 (2024); *Hylete LLC v. Hybrid Athletics, LLC*, 931 F.3d 1170, 1173 (Fed. Cir. 2019). Substantial evidence is "more than a mere scintilla"—"it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 216-17 (1938). 2 Gilson on Trademarks § 8.05 (2024). The possibility of drawing two inconsistent conclusions from the evidence does not prevent the Board's findings from being supported by substantial evidence. *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

The Board's holding that there was no likelihood of confusion is a conclusion of law based on the underlying facts as determined by the Board. This conclusion of law is reviewed de novo by the Federal Circuit. *Hylete*, 931 F.3d at 1173.

Fuente bears the burden of proving likelihood of confusion by a preponderance of evidence. *Cunningham v. Laser Golf Corp.*, 222 F.3d 943, 951 (Fed. Cir. 2000).

### B. SUBSTANTIAL EVIDENCE SUPPORTS THE BOARD'S FACTUAL CONCLUSION THAT VAPOROUS'S DAB MAN MARK "IS A STICK FIGURE" AND THAT IT IS DIFFERENT VISUALLY AND IN CONNOTATION AND COMMERCIAL IMPRESSION FROM THE LETTER X

#### 1. Fuente, Vaporous, and the Board All Agree That The Dab Man Mark "Is a Stick Figure"

Fuente and Vaporous stipulated that Vaporous' Dab Man Mark "consists of an abstract stick figure consisting of two diagonal intersecting lines in the shape of a wide stylized letter 'X' and a shaded circle above the letter 'X'" (Appx133; Appx44) This is consistent with Vaporous' description of the mark in its application (Appx48). The Board agreed with both Vaporous and Fuente, stating, "We agree Applicant's mark is a stick figure." (Appx44). The Board further factually

concluded that the stick figure, as a representation of a human being, "differs from a letter of the alphabet *visually*, and in *connotation*, and *commercial impression*." (Appx44; emphasis added).

**2. Fairness Requires That Fuente Be Held To Its Factual Stipulation**

Fuente's brief desperately attempts to undermine the stipulation to which it agreed (Fuente Brief at 27-36). However, fairness and longstanding precedent require that this factual stipulation be established as fact and removed from dispute.

Fuente's efforts to undermine the stipulation that the Dab Man mark "is a stick figure" offends fairness and well-established law. "'Factual stipulations' are formal concessions that have the effect of withdrawing a fact from issue and dispensing entirely with the need for proof of the fact." 2 Moore's Manual--Federal Practice and Procedure § 18.05 (2024). "A stipulation of fact that is fairly entered into is controlling on the parties and the court is generally bound to enforce it." *Ring & Pinion Serv. Inc. v. ARB Corp. Ltd.*, 743 F3d 831, 836 (Fed Cir 2014)(district court erred by failing to enforce parties' factual stipulation). Holding parties to their stipulations of fact is well-established as the law of this court and its predecessors, with precedent to this effect going back well over 100 years. *American Bead Co. v. United States*, 7 Ct. Cust. 161, 165 (Court of Customs Appeals, 5/23/1916)("a

stipulation of facts was binding upon the board and upon this court, as has ever been held by all courts.")

In view of this well-established and binding precedent, there can be no dispute that the Dab Man mark "is a stick figure" as explicitly found as fact by the Board.

**3. Indisputable Facts Provide Substantial Evidence Supporting The Board's Factual Determination That The Dab Man Mark and Fuente's X Are Dissimilar**

After some discussion, the Board further made the following finding of fact: "we find consumers would not perceive Applicant's design mark as a letter X, but as a stick figure. The *dissimilarity between the marks weighs against finding a likelihood of confusion*." (Appx46, emphasis added).

"The TTAB's findings of fact will be reviewed by the Federal Circuit to determine if there is 'substantial evidence' to support the Board's conclusions." 3 Gilson on Trademarks § 9.04 (2024); *Hylete LLC v. Hybrid Athletics, LLC*, 931 F.3d 1170, 1173 (Fed. Cir. 2019). Thus, the question before this court is whether there is "substantial evidence" to support the Board's factual conclusion that Applicant's Dab Man mark "is a stick figure."

Substantial evidence is "more than a mere scintilla"—"it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 216-17 (1938). 2

Gilson on Trademarks § 8.05 (2024). Even Fuente's disagreement is anticipated and dealt with by the case law, as the possibility of drawing two inconsistent conclusions from the evidence does not prevent the Board's findings from being supported by substantial evidence. *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

Fuente's explicit factual stipulation that Applicant's Dab Man mark "consists of an abstract stick figure consisting of two diagonal intersecting lines in the shape of a wide stylized letter 'X' and a shaded circle above the letter 'X'" provides far "more than a mere scintilla" of support for the Board's conclusion that the Dab Man mark "is a stick figure". Binding precedent demands that this fact be removed from dispute.

**4. Fuente Has Presented No Evidence To Rebut The Board's Factual Finding That The Dab Man Mark "Is A Stick Figure" Or That It Is Different Visually And In Connotation And Commercial Impression From The Letter X**

**a) Fuente's Contentions About Hidden Meanings Both Offends Case Law And Admits Confusion Is Unlikely**

In its effort to undercut the binding stipulation, Fuente discusses Applicant's other mark DAB X, which is not at issue in this case. More specifically, Fuente tries to increase the significance of advanced, hidden meanings in the Dab Man Mark. For example, Vaporous sells products that bear both the graphical Dab Man mark (

) and the word mark DAB X. A hidden meaning of the Dab Man mark is that the "head" or dot of the stick figure represents a dab – which is a portion of herbal concentrate that Vaporous' product vaporizes (Appx803-804), and the crossed stick figure body represents the "X", which can symbolize a cool X-factor (Appx803). Thus, is a graphical representation of DAB X[2].

Fuente attempts to bring this hidden meanings of the graphical Dab Man mark to the forefront – even to the vitiation of the stipulation and the Board's explicit holding that the Dab Man mark "is a stick figure". (Fuente Brief at 32). Fuente also goes into depth about the "X" in their FUENTE FUENTE OPUS X mark and XFF logo as representing their historic "Project X". (Fuente Brief at 33). Fuente cites *In re White Swan Ltd.*, 8 USPQ2d 1534, 1536 (TTAB 1988) for the proposition that if a group that "is not inconsequential" would understand a mark to have a meaning similar to a registered mark, it "will generally still result in a finding of likelihood of confusion". However, Fuente has not identified any group of consumers that would see such meanings in the marks at issue. Vaporous now proposes considering what group of hypothetical consumers would recognize the hidden meanings in

[2] Notably, Fuente expresses no likelihood of confusion allegation in connection with the word mark DAB X, which is not at issue in this proceeding.

as well as the reference to "Project X" in Fuente's registration. Of necessity, such hypothetical consumers would have to be familiar enough with the products to understand that is associated with the DAB X mark and sophisticated enough to make the connection between the "head" or dot of the stick figure and a dab. These hypothetical consumers would also have to be familiar enough with high-end premium cigars to know Fuente's back story for its FUENTE FUENTE OPUS X mark and the development of "Project X" so many years ago. It offends reason to think that such knowledgeable and sophisticated consumers would get confused between the marks. Such hypothetical consumers would be knowledgeable and sophisticated, having extensive experience with both parties' products. However, as stated by the Board, when evaluating dissimilarities, "The focus is on the recollection of the average purchaser, who normally retains a general rather than a specific impression of trademarks." (Appx43, emphasis added; citing *Joel Gott Wines LLC v. Rehoboth Von Gott Inc.*, 107 USPQ2d 1424, 1430 (TTAB 2013)). Thus, Fuente's analysis, which presupposes knowledgeable and sophisticated consumers, offends the correct focus of the analysis, which is simply an "average purchaser". Not only is Fuente's proposed analysis inconsistent with the analysis demanded by case law, but it also would change this case analysis to recast the likelihood of confusion analysis as involving knowledgeable and sophisticated consumers. If such a change were to be made, Vaporous still likes its chances.

Also, if Fuente's hypothetical consumers were to recognize the Dab Man to be a graphical representation of the word mark DAB X, as Fuente contends, such consumers would, of necessity, tie the Dab Man mark to the DAB X mark, and not to Fuente's X. Thus, Fuente's position actually argues AGAINST a likelihood of confusion between the marks.

Yet further, in addition to its stipulation that the Dab Man mark "is a stick figure" as discussed above, Fuente argues that the Dab Man mark will "evoke[e] a person having the X-factor." (Fuente Brief at 32; Appx 803, emphasis added). Fuente's own argument is that the Dab Man stick figure will evoke a "person" in the minds of consumers. This admission that the Dab Man mark evokes a person further reinforces the Board's finding that the Dab Man mark "is a stick figure". (Appx44).

**b) No Record Evidence Subverts The Board's Finding That The Dab Man Mark "Is A Stick Figure"**

Despite Fuente's assertion that there is "substantial record evidence" (Fuente Brief at 29) disregarded by the Board, it presents nothing of substance beyond that which has been discussed above. Fuente may argue such evidence goes to "the true meaning and intended impression" of the Dab Man mark (Fuente Brief at 31). However, their argument does nothing to change what the Dab Man mark is. What the Dab Man mark is – as concluded by the Board – "is a stick figure". (Appx44)

The Board's factual finding that Vaporous' Dab man mark "is a stick figure" is supported by substantial evidence, and must not be disturbed.

### 5. THE BOARD CORRECTLY HELD "A STICK FIGURE HAS NO PRONUNCIATION"

Fuente complains that the Board did not compare the parties' marks as to their sound (Fuente Brief at 36), citing a case in which the court held the marks and could be spoken. *Nike Inc. v. WNBA Enterprises, LLC*, 85 USPQ2d 1187, 1199 (TTAB 2007). However, Fuente has missed the point – even of the case it cites.

First, as well established above, the Dab Man mark "is a stick figure". (Appx44). This stipulated fact is not in dispute. In *Nike*, the court was only willing to pronounce the letter S in the featured marks because the letter S was not "subordinate to the overall design." *Nike* 85 USPQ2d at 1199. Here, since it is an indisputable fact that the Dab Man mark "is a stick figure" (Appx44), any depiction of an X in the Dab Man mark is "subordinate to the overall design" in the manner discussed in *Nike*, as the overall design "is a stick figure." (Appx44). The Board was correct to conclude, "A stick figure has no pronunciation, and so does not sound like the letter X." (Appx44).

### 6. Substantial Evidence Supports the Board's Factual Determination That the Dab Man Mark Differed From the Letter X Visually, in Sound, in Connotation and in Commercial Impression.

As just discussed, the Board correctly found, "A stick figure has no pronunciation, and so does not sound like the letter X." (Appx44). The indisputable stipulated fact that the Dab Man mark "is a stick figure" further provides substantial evidence to support the Board's further factual findings that the Dab Man mark differs from the letter X "visually, and in connotation, and commercial impression." (Appx44).

As such, substantial evidence supports the Board's correct factual finding that, "The dissimilarity between the marks weighs against finding a likelihood of confusion." (Appx46).

## C. FUENTE'S OWN EVIDENCE AND ARGUMENTS DEMONSTRATE THAT ANY PRESUMPTION THAT THE GOODS TRAVEL IN OVERLAPPING TRADE CHANNELS TO OVERLAPPING CONSUMERS DOES NOT REFLECT REALITY

Fuente goes to great lengths in its brief to characterize its FUENTE FUENTE OPUS X-branded cigars as having premium quality and being enormously

successful. (Fuente Brief at 5-16). The FUENTE FUENTE OPUS X cigars have an extensive back story leading to a "cult status among cigar smokers" (Fuente Brief at 11). Production of OPUS X-branded cigars is "extremely limited" (Fuente Brief at 11; Appx146-147). Thus, it is common for OPUS X-branded cigars to sell out even when they are being sold for much higher than the suggested retail price. (Appx2603).

Further, Fuente is on record testifying to the sophistication of cigar smokers. To wit, in a consent agreement Fuente declared, "based upon many years of knowledge of their industries, trades, and marketing experience", that "consumers of the goods [cigars] are relatively sophisticated and capable of distinguishing between the goods offered under the [INSPIRATION] Mark and those offered under [the DIVINE INSPIRATION] Mark". (Appx1880-1881). The Federal Circuit has declared that parties who enter into a consent agreement "are in a much better position to know the real life situation than bureaucrats or judges and therefore such agreements may, depending on the circumstances, carry great weight." *Bongrain Int'l (American) Corp. v. Delice de France, Inc.*, 811 F.2d 1479 (Fed. Cir. 1987). Thus, this signed declaration should have "great weight" – or at least some tangible meaning - in this matter.

Alas, proceedings before the Trademark Office often take place without a longstanding factual record, and case law precedent encourages making

presumptions about certain relationships to which there may be little or no – or even adverse – evidentiary support. For example, in its decision, the Board "presumed" that both parties' goods move in similar channels of trade and classes of customers. (Appx30; citing *Cunningham v. Laser Golf Corp.*, 222 F.3d 943, 948 (Fed. Cir. 2000)).

There appears to be no question that the presumption of overlapping trade dictated by case law does not reflect reality in this matter. Not only are cigar smokers that seek FUENTE FUENTE OPUS X-branded cigars "relatively sophisticated" per Fuente, but production of such cigars is limited, and Fuente has testified that a consumer desiring such a cigar would have to put in some effort to find one. (Appx1197, 2615).

While the case law may dictate presumptions leading to the channels of trade factor "favoring" likelihood of confusion, justice surely requires that the known facts are relevant in seeking justice while determining the weight of this factor. The evidence of record and Fuente's own arguments demonstrate that the presumption does not reflect reality. Thus, to the extent this factor favors likelihood of confusion, it should not carry much weight.

### D. SUBSTANTIAL EVIDENCE SUPPORTS THE BOARD'S CONCLUSION THAT FUENTE'S STANDARD CHARACTER X MARK IS NOT VERY STRONG

#### 1. The Board Correctly Found That Since Fuente Has Only Sparsely Used an X Alone, The Letter X Does Not Function As An Effective Source Indicator For Fuente

After thorough consideration, the Board made the following factual finding concerning Fuente's standard-character X mark: "we do not find that a significant portion of the relevant consuming public recognizes the mark X as a source indicator for Opposer. Opposer's registered mark X is neither very weak nor very strong". (Appx42). This factual finding is supported by substantial – even extensive – evidence and must not be disturbed.

As noted above, Fuente's brief spends a lot of time and pages highlighting the commercial success, sophistication, and highly-premium nature of its cigars associated with the FUENTE FUENTE OPUS X, OPUS X, and other word marks, as well as its XFF design mark. And it certainly appears that some consumers recognize at least some of these marks. However, none of these marks are at issue in this appeal. In fact, in its initial Trial Brief Fuente argued that Fuente had a "family of X marks". However, the Board disagreed, and specifically found that Fuente had no family of marks. (Appx23). In fact, the Board recognized that Fuente

was trying to wrongfully attribute to the letter X customer recognition of Fuente's word marks. It held, "when Opposer cites evidence of recognition of X, it does not refer to X alone but to FUENTE FUENTE OPUSX". (Appx42).

Recognizing that Fuente's letter X did not benefit from Fuente's other marks, the Board narrowed the analysis of likelihood of confusion to Fuente's single registration for a standard character X mark. (Appx29). Fuente has not appealed the Board's finding that there is no family of X marks (see Fuente brief at page 1, footnote 1). Thus, the argument that the standard character X mark is somehow bolstered by other marks is not at play in this appeal.

Notwithstanding all the accolades and stories about FUENTE FUENTE OPUS X-branded cigars, the Board recognized that Fuente's own arguments and evidence "includes only a handful of examples of X used alone". (Appx420). Vaporous submits that this factual finding was generous to Fuente, particularly in view of the presentation in Fuente's brief. To wit, pages 50-59 of Fuente's brief purport to show several instances of "X" being used alone, but in fact they show repeated instances of marks such as FUENTE FUENTE OPUS X, OPUS X, other word marks and the XFF design – none of which depict the letter X being used alone. Vaporous submits that Fuente's own evidence shows the X is <u>never</u> used alone. At the very least, Fuente's own evidence and brief show the letter X has been used only with and/or incorporated into other marks.

Fuente's own evidence provides substantial evidence to support the Board's factual conclusion that there are, at most, "only a handful of examples of X used alone." (Appx42).

Fuente's arguments also appear to be an attempt to reincarnate its failed (and not appealed and thus waived) contention that there is a "family" of X marks. This must not be countenanced by this court. The Board specifically found, "after careful review, we find that the evidence does not support that multiple X marks have been used and promoted together by Opposer in such a manner as to create public recognition of a family of marks." (Appx23). Fuente has not disputed this factual finding, and thus has waived any objection to it.

In essence, Fuente makes the same failed argument it made at trial. Its "evidence" presented on pages 50-59 of its brief is simply more of the same thing that was initially presented to and rejected by the Board. Fuente shows, at best, "only a handful of examples of X used alone" (Appx42) and appears to seek for its standard character X mark to be carried by its other marks. However, substantial evidence – including Fuente's own evidence – that clearly shows, at most, "only a handful of examples of X used alone", supports the Board's factual conclusion, "we do not find a significant portion of the relevant consuming public recognizes the mark X as a source indicator for Opposer. Opposer's registered mark X is neither very weak nor very strong, it is entitled to the protection accorded any inherently

distinctive mark." (Appx42).

#### 2. Any Strength Arguably Attributable To Being Arbitrary Is Mooted By The Board's Finding That The X Mark Does Not Function As An Indicator Of Source

Fuente contends that its X mark is arbitrary and somehow entitled to broad protection. (Fuente brief at 43). However, the Board was generous to give it protection accorded to an inherently distinctive mark. The importance of the Board's finding that Fuente's mark X is NOT recognized as a source indicator for Fuente is a damning factual finding which, basically, is the same as saying that Fuente's standard character X does not function as a trademark. Any variation between being arbitrary or suggestive does not alter the fact that the Board found that Fuente's standard character X does not function as a trademark.

#### 3. Ten Years of Coexistence In the Market With Other X Marks Without Any Confusion Suggests That Fuente's X Mark is Weak

If anything, the Board was too generous to Fuente. During the trial phase, Vaporous pointed out that Fuente's marks coexisted with several X-based marks in the oral vaporizer space with no known confusion over the space of many years (Appx1169-1179; 1201-1203). The Board discounted this evidence, stating, "because Applicant did not supplement the agreements with any evidence that the

allowed uses are taking place, we accord little probative weight to the agreements." (Appx39, footnote 59). The Board was incorrect about the evidence. In fact, evidence of record clearly shows important coexistent use taking place in the market without confusion.

In 2013 Pax Labs applied to register (the "Pax X") in connection with "electronic vaporizers for the ingestion and inhalation of tobacco and other herbal matter." (Appx1138, 2305-2323). As can be seen, is a stylized X with no other transforming feature. Fuente admits that, at the time, it "had no reason to believe that in 2013 consumers would confuse its X Marks with PAX's applied-for mark for electronic vaporizers" (Appx1138), and confidential contract terms confidential contract terms confidential contract terms product. (Appx1139).

Pax still uses prominently on its vaporizers, as demonstrated below:




(Appx1176).

Fuente has acknowledged that even though Pax has been using the Pax X ( ) for over 10 years, there has been NO known customer confusion between Pax's vaporizers and Fuente's X-OPUS X-branded cigars. (Appx2685). The marks have coexisted peacefully with no known confusion for 10 years! Applicant submits that Fuente was absolutely right when it concluded, in 2013, that consumers would not confuse its X Mark with Pax's , (Appx1138) and that conclusion is still correct today.

The evidence of record supports that the Pax mark has been in continual use for over 10 years. The Trademark Office records concerning Registration No. 410446 (the Pax mark) is of record at Appx2304-2323. These Trademark Office

records show that the was first used in July 2012 (Appx2305). Such facts are established in trademark registration by a sworn statement by the applicant that the mark is, inf fact, in use in commerce. Also, a Declaration under Section 8 & 15 was filed April 7, 2020. Such declaration also requires a sworn statement that the mark is still in use in commerce (Appx2305, 2312-2313). Thus, the evidence of record supports that the Pax Mark has been, and is, in continuous use since July 2012. The Pax remains in prominent use today, as Pax is a leader in oral vaporizers.

The record establishes that Pax's X has peacefully coexisted with Fuente's X mark for over 10 years without consumer confusion.

Since substantial evidence supports the Board's conclusion that Fuente's X mark does not function as an indicator of source, the Board's conclusion that Fuente's X mark is not "very strong" (Appx42) must not be disturbed. However, the Board mistakenly ignored evidence of record showing 10 years of coexistence without confusion between Fuente's X mark and the Pax X . The Board should have considered this evidence of record and concluded that the Fuente X mark is, in fact, "very weak". *Juice Generation, Inc. v. GS Enters. LLC*, 794 F.3d 1334, 1338 (Fed. Cir. 2015) ( "[E]vidence of third-party use bears on the strength or weakness of an opposer's mark.") (citing *Palm Bay Imps., Inc. v. Veuve Clicquot Ponsardin*

*Maison Fondee En 1772*, 396 F.3d 1369, 1373 (Fed. Cir. 2005))).

### E. THE BOARD CORRECTLY WEIGHED THE DUPONT FACTORS TO FIND NO LIKELIHOOD OF CONFUSION

Fuente complains about the Board's ultimate conclusion that there is no likelihood of confusion between the marks, asserting that the Board's balancing of the factors was "opaque" (Fuente Brief at 62), and the dispositive nature of the dissimilarity of the marks was inappropriate (Fuente Brief at 61). Vaporous submits that this is a mischaracterization of the decision. In fact, the Board explicitly stated it "considered all of the arguments and evidence of record, and all relevant DuPont factors." (Appx46). Reviewing its findings, the Board stated, "The lack of actual confusion and the strength of Applicant's standard character X mark is neutral. The goods, channels of trade and classes of purchasers to whom sales are made are related or overlap, and this favors a finding of likelihood of confusion. However, the marks create different commercial impressions, and the dissimilarity of the marks weighs against a likelihood of confusion." (Appx46).

It is clear that the Board simply concluded – correctly – that the different commercial impressions and dissimilarity of the marks was a more important factor than the presumption-based channels of trade factor.

It is perfectly appropriate, and not uncommon, for a finding of dissimilarity of the marks to be dispositive in a likelihood of confusion analysis. "It is possible

that the first [*DuPont*] factor, the similarity or dissimilarity of the marks themselves, may be dispositive of the issue." 4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 23:79 (5th ed. 2023); *Kellogg Co. v. Pack'Em Enters., Inc.*, 951 F.2d 330 (Fed. Cir. 1991) (upholding Board's grant of summary judgment finding no likelihood of confusion based only on the dissimilarity of the marks in their entireties as to appearance, sound, connotation and commercial impression).

As an example, in *Champagne Louis Roederer, S.A. v. Delicato Vineyards*, 148 F.3d 1373, 1375 (Fed. Cir. 1998), this court affirmed a Board decision in which the Board had made a presumption that the goods travelled in the same trade channels, but treated the dissimilarity of the marks with respect to appearance, sound, significance, and commercial impression as the dispositive DuPont factor. In *Champagne*, the Board found that the word marks "CRISTAL" and "CRYSTAL CREEK" evoked very different images in the minds of relevant consumers: while the former suggested the clarity of the wine within the bottle or the glass of which the bottle itself was made, the latter suggested "a very clear (and hence probably remote from civilization) creek or stream." The Board then found that the appearance and sound of the competing marks were also dissimilar. Based on these three underlying findings on this single DuPont factor, the Board dismissed the opposition because of the difference in commercial impressions created by the marks, and the Federal Circuit affirmed. *Champagne*, 148 F.3d at 1375.

The present case has similarities to the *Champagne* case just discussed. For example, in the present matter, the finding of similarity of trade channels is based on presumptions, not actual facts, and it seems that it should merit very little weight. The presumption correctly did not rule the day with the Board. Instead, the Board firmly established the well-supported facts that Applicant's Dab Man mark "is a stick figure" that is different Fuente's standard character X "visually, and in connotation, and commercial impression", and further that the Dab Man mark "has no pronunciation, and so does not sound like the letter X." (Appx44). As in *Champagne*, based on these underlying findings on this single DuPont factor, which findings are supported by substantial evidence, the Board correctly dismissed the opposition because of the difference in commercial impressions between the marks. (Appx46).

### F. FUENTE HAS NOT SATISFIED ITS BURDEN TO PROVE LIKELIHOOD OF CONFUSION

Fuente asserts that the Board erred by not resolving any doubts as to the existence of a likelihood of confusion in Fuente's favor. (Fuente Brief at 64). However, Fuente doesn't identify any facts that were in doubt. The Board, in contrast, was clear and confident in its findings of fact throughout the decision. There simply isn't any doubt to resolve in Fuente's favor.

More importantly, the Board correctly noted that Fuente bears the burden of

proving likelihood of confusion by a preponderance of evidence. (Appx9, citing *Cunningham v. Laser Golf Corp.*, 222 F.3d 943, 951 (Fed. Cir. 2000)). Fuente has not met its burden.

## V. CONCLUSION

Substantial evidence supports the Board's factual determination that "consumers would not perceive Applicant's design mark as a letter X, but as a stick figure". (Appx46). Such substantial evidence also supports the Board's further factual conclusion, "The dissimilarity between the marks weighs against finding a likelihood of confusion." (Appx.46). Also, sound law and logic support the conclusion that this dissimilarity demonstrates that there is no likelihood of confusion between the Dab Man mark and Fuente's X Mark. As such, the Board was correct to dismiss the notice of opposition, and the dismissal should be affirmed.

Date: October 28, 2024

Respectfully submitted,
/s/ Glen L Nuttall

Glen L. Nuttall
FisherBroyles, LLP
145 S. Fairfax Ave. Suite 200
Los Angeles, CA 90036
(949) 584-2774

*Attorney for Applicant*
*Vaporous Technologies, LLC*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 24-1460

**Short Case Caption:** Fuente Marketing Ltd. v. Vaporous Technologies, LLC

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

- [x] the filing has been prepared using a proportionally-spaced typeface and includes 6270 words.

- [ ] the filing has been prepared using a monospaced typeface and includes ___________ lines of text.

- [ ] the filing contains ___________ pages / ___________ words / ___________ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. ___________).

Date: 10/28/2024

Signature: /s/ Glen L Nuttall

Name: Glen L Nuttall

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF CONFIDENTIAL MATERIAL

**Case Number:** 24-1460

**Short Case Caption:** Fuente Marketing Ltd. v. Vaporous Technologies, LLC

**Instructions:** When computing a confidential word count, Fed. Cir. R. 25.1(d)(1)(C) applies the following exclusions:

- Only count each unique word or number once (repeated uses of the same word do not count more than once).
- For a responsive filing, do not count words marked confidential for the first time in the preceding filing.

The limitations of Fed. Cir. R. 25.1(d)(1) do not apply to appendices; attachments; exhibits; and addenda. *See* Fed. Cir. R. 25.1(d)(1)(D).

The foregoing document contains 26 number of unique words (including numbers) marked confidential.

☐ This number does not exceed the maximum of 15 words permitted by Fed. Cir. R. 25.1(d)(1)(A).

☐ This number does not exceed the maximum of 50 words permitted by Fed. Cir. R. 25.1(d)(1)(B) for cases under 19 U.S.C. § 1516a or 28 U.S.C. § 1491(b).

☑ This number exceeds the maximum permitted by Federal Circuit Rule 25.1(d)(1), and ~~the filing is accompanied by~~ a motion to waive the confidentiality requirements~~.~~ was granted on 10/23/2024 (Doc 36).

Date: 10/28/2024 Signature: /s/ Glen L Nuttall

Name: Glen L Nuttall