# United States Court of Appeals for the Federal Circuit

---

**FUENTE MARKETING LTD.,**
*Appellant*

**v.**

**VAPOROUS TECHNOLOGIES, LLC,**
*Appellee*

---

2024-1460

---

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board in No. 91270800.

---

Decided: April 8, 2026

---

VIRGINIA L. CARRON, Finnegan, Henderson, Farabow, Garrett & Dunner, LLP, Atlanta, GA, argued for appellant. Also represented by ROBERT GORDON WRIGHT; DOUGLAS ANTHONY RETTEW, Washington, DC.

GLEN L. NUTTALL, FisherBroyles, LLP, Los Angeles, CA, argued for appellee.

---

Before PROST, TARANTO, and HUGHES, *Circuit Judges*.

HUGHES, *Circuit Judge*.

Fuente Marketing Ltd. appeals the decision of the United States Trademark Trial and Appeal Board dismissing its opposition to a trademark application filed by Vaporous Technologies, LLC. The Board dismissed Fuente's opposition on the ground that there was no likelihood of confusion between Vaporous's applied-for mark and Fuente's registered X marks. We affirm.

I

Fuente Marketing Ltd. (Fuente) and Vaporous Technologies, LLC (Vaporous) both offer smoking-related products. Fuente is a family-owned-and-operated company that sells premium hand-rolled cigars made with tobacco grown in the Dominican Republic. Fuente owns two standard character trademarks for the letter X for use in connection with cigars, ashtrays not of precious metal, cigar cutters, and lighters not of precious metal. *See* X, Registration No. 3,254,146; X, Registration No. 3,285,314. As it has registered standard character marks, Fuente is entitled to depictions of its X marks without limitation as to font style, size, or color. *See Citigroup Inc. v. Cap. City Bank Grp., Inc.*, 637 F.3d 1344, 1353 (Fed. Cir. 2011).

Vaporous designs and manufactures oral vaporizers (colloquially, vapes), which are battery-powered devices that simulate smoking by heating a concentrate into an aerosol the user inhales. On September 18, 2020, Vaporous filed an intent-to-use application, seeking to register the following mark:

for use on or in connection with the following goods in International Class 34:

> Oral vaporizers for smoking purposes; oral vaporizers for smoking purposes for use with liquid nicotine solutions; oral vaporizers for smoking purposes for use with electronic cigarette liquid (e-

> liquid); oral vaporizers for smoking purposes for use with oils, waxes and isolates containing CBD being solely derived from hemp with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis; oral vaporizers for smoking purposes for use with oils waxes and isolates having a tetrahydrocannabinol concentration of more than 0.3 percent on a dry weight basis; all of the foregoing goods are exclusively for use with tobacco products, cannabis products solely derived from hemp with a delta-9 tetrahydrocannabinol (THC) concentration of not more than 0.3 percent on a dry weight basis, and CBD products solely derived from hemp with a delta-9 tetrahydrocannabinol (THC) concentration of not more than 0.3 percent on a dry weight basis[.]

U.S. Trademark Application Serial No. 90/192,180 (filed Sep. 18, 2020). Fuente opposed Vaporous's application, alleging a likelihood of confusion between the mark and its own standard character X marks.[1] *See* 15 U.S.C. § 1052(d). During the opposition proceedings, the parties filed a stipulation addressing evidence and facts relevant to the likelihood of confusion analysis. *See* J.A. 130. The parties made the following stipulation of fact: "Vaporous's X Dot Mark 'consists of an abstract stick figure consisting of two diagonal intersecting lines in the shape of a wide stylized letter "X" and a shaded circle above the letter "X."'" J.A. 133.

In December 2023, the Trademark Trial and Appeal Board (Board) dismissed Fuente's opposition after

---

[1] Fuente also opposed Vaporous's application on grounds that the mark was likely to be confused with Fuente's family of eighteen registered marks encompassing the letter X. But the Trademark Trial and Appeal Board concluded no such family of marks exists, and Fuente does not challenge that finding on appeal.

determining there was no likelihood of confusion between Vaporous's mark and Fuente's X marks. *Fuente Mktg. Ltd. v. Vaporous Techs., LLC*, No. 91270800, 2023 WL 11758750, at *18 (T.T.A.B. Dec. 14, 2023) (*Decision*). The Board assessed the existence of a likelihood of confusion by considering the factors set out in *In re E.I. DuPont DeNemours & Co.*, 476 F.2d 1357, 1361 (C.C.P.A. 1973). Specifically, the Board determined that the lack of actual confusion and the strength of Fuente's marks were neutral; the goods, channels of trade, and classes of purchasers were related or overlapped, favoring a likelihood of confusion; and the dissimilarity of the marks weighed against a likelihood of confusion. *Decision*, 2023 WL 11758750, at *18. The Board concluded that, although many factors weighed in favor of a likelihood of confusion, the parties' marks create distinct commercial impressions and are sufficiently dissimilar to negate any likelihood of confusion. The Board thus dismissed Fuente's opposition, and Fuente timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(B).

## II

Under the Lanham Act, a mark may be refused registration on the principal register if it is "likely, when used on or in connection with the goods of the applicant, to cause confusion" with another's mark. 15 U.S.C. § 1052(d). "Likelihood of confusion is a question of law with underlying factual findings made pursuant to the *DuPont* factors." *StonCor Grp., Inc. v. Specialty Coatings, Inc.*, 759 F.3d 1327, 1331 (Fed. Cir. 2014). We review the Board's factual findings on each relevant *DuPont* factor for substantial evidence but its ultimate legal conclusion regarding likelihood of confusion de novo. *Id.* Substantial evidence is "more than a mere scintilla"; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938).

On appeal, Fuente challenges the Board's analysis of *DuPont* factors one and five—respectively, the similarity of the marks and the fame of Fuente's registered X marks. Fuente also challenges the Board's overall weighing of the *DuPont* factors.[2] Vaporous counters, primarily contesting the Board's analysis of *DuPont* factors three and four, which consider the similarity between the parties' trade channels and the relative sophistication of each party's consumers.

A

The first *DuPont* factor assesses the "similarity or dissimilarity of the marks in their entireties as to appearance, sound, connotation and commercial impression." *DuPont*, 476 F.2d at 1361. "The proper test is not a side-by-side comparison of the marks, but instead whether the marks are sufficiently similar in terms of their commercial impression such that persons who encounter the marks would be likely to assume a connection between the parties." *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1368 (Fed. Cir. 2012) (cleaned up). The Board found that *DuPont* factor one decisively weighed against a likelihood of confusion because consumers would perceive Vaporous's mark as a stick figure, rather than the letter X. And because a stick figure has no pronunciation, unlike the letter X, the parties' marks differed in sound. The Board then focused on the visual differences between the marks, ultimately finding that the "dissimilarity between the

[2] Fuente also argues the Board erred by failing to resolve any doubts concerning likelihood of confusion in Fuente's favor as the senior user. But aside from generally alleging error, Fuente does not identify any doubts the Board failed to resolve in its favor. *See generally* Appellants' Br. 63–64. This argument is thus underdeveloped and waived. *See SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 (Fed. Cir. 2006).

marks weighs against finding a likelihood of confusion." *Decision*, 2023 WL 11758750, at *18. Fuente asserts error in the Board's analysis.

1

Fuente primarily argues the Board erred when it concluded Vaporous's mark would be perceived by consumers as a stick figure. Specifically, Fuente contends that it was error for the Board to rely on the parties' stipulation as conclusive evidence that *consumers* would perceive the mark as a stick figure when the stipulation (i) merely quoted Vaporous's own description of its mark and (ii) also characterized the mark as a stylized X. Vaporous responds, arguing that Fuente is bound by its stipulation—which conceded that Vaporous's mark is a stick figure—and that the Board's conclusions are supported by substantial evidence.

To the extent that the Board relied on the parties' stipulated description of Vaporous's mark as dispositive of how *consumers* would perceive the mark, this reliance was harmless error. To begin, the stipulation does not purport to resolve how *consumers* will perceive the mark, which is the perspective *DuPont* factor one considers. *See In re I.AM.Symbolic, LLC*, 866 F.3d 1315, 1323 (Fed. Cir. 2017); *Olde Tyme Foods, Inc. v. Roundy's, Inc.*, 961 F.2d 200, 203 (Fed. Cir. 1992) (comparing commercial impression of marks from the perspective of purchasers of the goods under the registrations). The stipulation merely quotes Vaporous's own description of its mark from its trademark application. *Compare* J.A. 133 (stipulation), *with* U.S. Trademark Application Serial No. 90/192,180 (filed Sep. 18, 2020). Further, the stipulation could at most be understood as indicating how the parties intended the mark to be perceived, which cannot conclusively establish how consumers actually perceive the mark without an assessment of other record evidence of consumer perception. *Cf. Schwarzkopf v. John H. Breck, Inc.*, 340 F.2d 978, 980

(C.C.P.A. 1965) (affirming Board finding of no likely confusion; rejecting appellant-opposer's reliance on a stipulation about what the mark sought to be registered is and stating that stipulation could not control over what record evidence showed); *Eureka Williams Corp. v. McCorquodale*, 205 F.2d 155, 158 (C.C.P.A. 1953) ("Such a stipulation, however, cannot foreclose the right of the reviewing court to point out and observe perfectly obvious differences, which actually exist, and which we feel were not intended to be overlooked because of a strict limitation that might be drawn from the language of such a stipulation."); TMEP § 808.02 ("A description cannot be used to restrict the likely public perception of a mark. A mark's meaning is based on the impression actually created by the mark in the minds of consumers, not on the impression that the applicant states the mark is intended to convey.").

But any error in relying on the stipulation was harmless. Here, the Board also reached the same dissimilarity conclusion without reference to the stipulation, and the Board's conclusion is supported by substantial evidence. *Decision*, 2023 WL 11758750, at *18 (reaching same conclusion "[e]ven if [Fuente] had not stipulated that Applicant's mark is a stick figure . . . ."); *see Henkel Corp. v. Procter & Gamble Co.*, 560 F.3d 1286, 1289 n.2 (Fed. Cir. 2009) (error harmless considering express disavowal of reliance on erroneous rationale). The Board assessed the mark separate from the parties' stipulation; concluded the "circle, or head of the stick figure" comprised about a fifth of the mark and thus was "not a minor or unnoticeable feature of the mark as a whole" that could be dissected from the mark; and found that based on the record, "consumers would not perceive [Vaporous's] design mark as a letter X, but as a stick figure." *Decision*, 2023 WL 11758750, at *18. This contradicts Fuente's assertion that the Board "based its entire similarity finding on the stipulation," Appellant's Br. 28, and renders any improper reliance on the parties' stipulation harmless. Moreover, it distinguishes the

Board's analysis from Fuente's cited, non-binding letter mark cases, which found similarities between embellished letter marks where the underlying letters remained distinct and were not dominated by another feature. *See* Appellant's Br. 34–35; *see, e.g.*, *Textron Inc. v. Maquinas Agricolas "Jacto" S.A.*, 215 USPQ 162, 164 (T.T.A.B. 1982) ("[H]ighly stylized, highly contrasting letter/design combinations tend to fall on the 'no likelihood' side of the adjudicative balance and rather clear portrayals of the letters involved in the compared marks tend to result in 'likelihood of confusion' findings.").

Fuente also argues the Board improperly disregarded substantial record evidence that Vaporous's mark would not be perceived as a stick figure. In particular, Fuente contends the "true significance" of Vaporous's mark on consumers "can only be appreciated by evaluating the record evidence related to Vaporous's selection, adoption, and use of the mark," including Vaporous's use of the mark as part of its larger DABX branding. Appellant's Br. 29–34 (citing record evidence that Vaporous selected the brand, DABX, to evoke an X-factor so as to suggest the "associated products are interesting and valuable" (quoting J.A. 840)). According to Fuente, that evidence makes clear Vaporous's mark evokes an X-factor sentiment similar to Fuente's X marks, rather than a stick figure. We are unconvinced, not least because Fuente now accuses the Board of erroneously ignoring the very evidence it previously argued the Board could not consider:

> [Vaporous] claims that because the [ mark] is used in association with a product branded DABX that "the meaning of [ mark] is, quite literally, 'dab x.'" Again, [Vaporous] cannot rely on how it uses the [ mark] in the marketplace in prescribing the meaning of the [ mark].

Opposition No. 91270800, 37 TTABVUE 20 (citation omitted); *see Key Pharms. v. Hercon Lab'ys Corp.*, 161 F.3d 709,

715 (Fed. Cir. 1998) ("The impropriety of asserting a position which the trial court adopts and then complaining about it on appeal should be obvious on its face, and litigants hardly need warning not to engage in such conduct."). But we are also not persuaded the Board ignored evidence, much less relevant evidence. To the extent that Fuente is advocating that we consider Vaporous's use of the mark in connection with other marks not part of the applied-for mark, we decline to do so. *See Denney v. Elizabeth Arden Sales Corp.*, 263 F.2d 347, 348 (C.C.P.A. 1959) ("In determining the applicant's right to registration, only the mark as set forth in the application may be considered; whether or not the mark is used with an associated house mark is not controlling."). The correct inquiry requires comparison only of the applied-for mark, , to Fuente's registered X marks. *In re I.AM.Symbolic*, 866 F.3d at 1324.

Further, "this court has said on multiple occasions that failure to explicitly discuss every issue or every piece of evidence does not alone establish that the tribunal did not consider it." *Novartis AG v. Torrent Pharms. Ltd.*, 853 F.3d 1316, 1328 (Fed. Cir. 2017). And here the Board stated it "considered all of the arguments and evidence of record" in reaching its conclusions. *Decision*, 2023 WL 11758750, at *18. We are not persuaded that the Board failed to consider evidence in the record. Substantial evidence supports the Board's conclusion that consumers are likely to perceive the mark as a stick figure, and we may not reweigh the evidence on appeal. *See In re NTP, Inc.*, 654 F.3d 1279, 1292 (Fed. Cir. 2011).

2

Fuente's other arguments regarding factor one are unavailing. Fuente contends the Board failed to compare the parties' marks regarding sound, as required by *DuPont* factor one. Fuente claims the Board made a blanket proposition that "every comparison of non-word marks—irrespective of their type or appearance—'turns on visual

similarity.'" Appellant's Br. 37 (quoting J.A. 46). But Fuente misapprehends the Board's opinion. The Board stated only that in the case of non-word marks, "visual dissimilarities *can* be dispositive," not that they are always dispositive. *Decision*, 2023 WL 11758750, at *17 (emphasis added). And the Board expressly considered sound, finding that Vaporous's mark has no pronunciation and therefore "does not sound like the letter X." *Id.* Fuente's cited cases and remaining arguments to the contrary rest on the presumption that the mark contains a distinct, separable letter X, which the Board rejected. *See* Appellant's Br. 36–39; *Nike Inc. v. WNBA Enters., LLC*, 85 USPQ2d 1187, 1199 (T.T.A.B. 2007) (distinguishing cases where letter is so highly stylized that it would normally be regarded as an arbitrary design from those where the underlying letter remains an "essential feature" of the mark).

Finally, Fuente argues the Board's factor one analysis abandoned the legal principle that where the "parties' goods are closely related, a lesser degree of similarity between the marks may be sufficient to give rise to a likelihood of confusion." *Coach Servs.*, 668 F.3d at 1368. And Fuente asserts that the Board's findings that other factors favored a likelihood of confusion "did not alter the Board's improper tolerance for substantial and confusing similarities between the competing marks." Appellant's Br. 41 (quoting *Century 21 Real Est. Corp. v. Century Life of Am.*, 970 F.2d 874, 877 (Fed. Cir. 1992)). But that argument assumes what it aims to prove. It presupposes that substantial and confusing similarities between the marks exist when the Board found that they did not. The Board cannot alter its tolerance for similarities between the marks if it finds none exist.

Accordingly, substantial evidence supports the Board's finding that the dissimilarities between the mark and Fuente's X marks weigh against a likelihood of confusion.

B

The third and fourth *DuPont* factors consider the similarity or dissimilarity of the parties' trade channels and "the conditions under which and buyers to whom sales are made, i.e. 'impulse' vs. careful, sophisticated purchasing." *DuPont*, 476 F.2d at 1361. The Board found that neither Vaporous's trademark application nor Fuente's registrations limit either party's goods to any particular channel of trade or class of consumer. As a result, the Board presumed the parties' goods "move in all channels of trade usual for such goods" and that they "are available to all potential classes of ordinary consumers." *Decision*, 2023 WL 11758750, at *12. Assessing evidence in the record, the Board then concluded that vapes and cigars "travel in overlapping channels of trade and, because [vapes] are considered in some respects to be an alternative to cigars, to some of the same customers." *Id.* As to the sophistication of purchasers, the Board cited evidence that vaping may serve as an introductory product for preteens and teens who later use other, traditional nicotine products. *Id.* at *13. Thus, because Vaporous's application and Fuente's registrations shared overlapping channels of trade and classes of purchasers, the Board concluded that *DuPont* factors three and four weighed in favor of a likelihood of confusion. *Id.* at *14.

On appeal, Vaporous argues the Board's analysis is flawed because its conclusions regarding factors three and four conflict with reality. Vaporous emphasizes that Fuente has signed a prior coexistence agreement with another entity stating that cigar purchasers are sophisticated and discerning consumers, and Vaporous contends that coexistence agreement should have been given "great weight" or "at least some tangible meaning" in this matter. Appellee's Br. 18 (quotation omitted). Further, Vaporous argues that the Board's presumption of overlapping channels of trade and consumers "does not reflect reality" as Fuente's cigars often sell quickly and are difficult to locate. *Id.* at 19.

The Board did not err. Vaporous effectively asks us to disregard the broad language of its application and Fuente's registrations when assessing *DuPont* factors three and four, and to instead defer to the parties' narrower real-world practices. To do so would be legal error. Registrability of an applicant's mark "must be decided on the basis of the identification of goods set forth *in the application*," regardless of what the record reveals as to the current real-world nature of the applicant's goods, channels of trade, or class of purchasers. *See Octocom Sys., Inc. v. Houston Comp. Servs. Inc.*, 918 F.2d 937, 942 (Fed. Cir. 1990) (emphasis added). And absent a binding agreement limiting an applicant's use of the applied-for mark to goods in certain channels or classes of consumers, an application with no such restrictions cannot be narrowed by evidence that the applicant's use is, in fact, meaningfully restricted. *See id.* at 943; *Stone Lion Cap. Partners, L.P. v. Lion Cap. LLP*, 746 F.3d 1317, 1323–25 (Fed. Cir. 2014). This is because it is the goods and services "recited in the application" that "determine the scope of the post-grant benefit of registration." *Stone Lion*, 746 F.3d at 1324. Vaporous identifies no such binding agreement limiting either party's use of the implicated marks. The Board's assessment of the third and fourth *DuPont* factors was proper, and its findings are supported by substantial evidence.

C

The fifth *DuPont* factor considers the fame of the senior mark. *DuPont*, 476 F.2d at 1361. Fame is "a matter of degree that varies along a spectrum from very strong to very weak," and relevant factors include "sales, advertising, length of use of the mark, market share, brand awareness, licensing activities, and variety of goods bearing the mark." *Coach Servs.*, 668 F.3d at 1367 (cleaned up). Here the Board assessed both the conceptual and commercial

strength of Fuente's X marks under factor five.[3] The Board concluded Fuente's X marks were arbitrary as applied to cigars and thus conceptually strong. *Decision*, 2023 WL 11758750, at *15. However, the Board found the X marks to be commercially weak because Fuente's evidence of marketplace recognition largely depicted the letter X integrated into other marks and advertising. Meaning, Fuente failed to show that consumers independently consider the letter "X," standing alone, as a source indicator for Fuente. *Id.* at *15–16. Balancing the X marks' strong conceptual strength with their weak commercial strength, the Board concluded the X marks were entitled only to the same "protection accorded any inherently distinctive mark" and categorized factor five as neutral in the likelihood of confusion analysis. *Id.* at *16, *18.

Fuente argues the Board erred by giving "no weight" to the conceptual strength of Fuente's X marks. Appellant's Br. 42. Fuente notes that not all inherently distinctive

---

[3] Both the fifth and the sixth *DuPont* factors consider strength. While the fifth factor considers the prior mark's fame in an effort to assess its strength in the marketplace, the sixth considers the existence of similar marks on similar goods as a measure of the extent to which other marks weaken the prior mark. *Spireon, Inc. v. Flex Ltd.*, 71 F.4th 1355, 1362 (Fed. Cir. 2023). Here the Board assessed the commercial and conceptual strength of Fuente's marks under the fifth *DuPont* factor, but we have previously held such an analysis is proper under factor six. *See id.* ("There are two prongs of analysis for a mark's strength under the sixth factor: conceptual strength and commercial strength."). Because neither party alleges error in the Board's consideration of commercial and conceptual strength under factor five rather than six, and because it is immaterial to our assessment of the Board's substantive analysis, this distinction is harmless.

marks are entitled to the same scope of protection and contends the Board improperly collapsed the distinction between the tiers of distinctive marks (suggestive versus arbitrary or fanciful) when it determined Fuente's marks were entitled to the same scope of protection as any inherently distinctive mark. Fuente further argues the Board ignored substantial record evidence showing Fuente's X marks were consistently promoted and independently recognized as source identifiers.

Fuente misapprehends the Board's opinion. The Board did not give "no weight" to the X marks' conceptual strength. Rather, the Board acknowledged the X marks are arbitrary, and thus conceptually strong, while separately concluding that this conceptual strength is offset by the marks' limited *commercial* strength. *Decision*, 2023 WL 11758750, at *15–16. Nor did the Board ignore substantial record evidence of commercial strength. Instead, the Board weighed the record as a whole and found that the "handful of examples of X used alone" were insufficient to find that a "significant portion of the relevant consuming public recognizes the mark X as a source indicator for [Fuente]." *Id.* at *16.

Our review of the record reaches the same conclusion. There is some evidence that Fuente's X marks may have standalone source recognition. *See* J.A. 490, 494, 568. But there is also substantial evidence that Fuente's use of the X mark has historically been integrated into other marks or displayed alongside other terms. Fuente's proffered evidence on appeal is exemplary. *See* Appellant's Br. 48 (citing as record evidence of Fuente's use of the X Mark the following product line names: FORBIDDEN X, RISING X, OPUS X PerfecXion No. 2, and OPUS X Oro Oscuro Belicoso XXX); *see also id.* at 50–57. Accordingly, though there may be some evidence suggesting consumers could associate X, standing alone, as a source indicator for Fuente, substantial evidence nonetheless supports the Board's finding that the evidence submitted fails to show separate and

distinct recognition. The Board's finding that *DuPont* factor five is neutral is therefore supported by substantial evidence.

D

The sixth *DuPont* factor considers the "number and nature of similar marks in use on similar goods." *DuPont*, 476 F.2d at 1361. Vaporous suggests the Board erred under *DuPont* factor six by assigning little weight to its submission of nine agreements demonstrating the existence of similar marks in use on similar goods. The Board accorded Vaporous's evidence little weight because Vaporous failed to submit evidence that the third-party marks were actually in use. *Decision*, 2023 WL 11758750, at *15 n.59. On appeal, Vaporous disagrees with the Board's rationale and identifies record evidence of present use as to one third-party mark.

While the Board's statement that Vaporous failed to submit *any* evidence of use may have been in error, its overall assignment of little probative weight to the evidence was not. Vaporous's evidence of a single third-party mark in use is insufficient to demonstrate a crowded field of similar marks sufficient to suggest consumers are accustomed to carefully distinguishing between such marks. *See Apex Bank v. CC Serve Corp.*, 156 F.4th 1230, 1235 (Fed. Cir. 2025). As such, we see no error in the Board's assignment of "little probative weight" to Vaporous's evidence. *Decision*, 2023 WL 11758750, at *15 n.59.

E

Finally, we consider the Board's weighing of the *DuPont* factors. Fuente asserts the Board failed to explain its balancing of the *DuPont* factors such that this court cannot reasonably discern the Board's rationale. Not so—the Board's path is discernable: As Fuente concedes, the Board concluded all but one *DuPont* factor was neutral or favored a likelihood of confusion. The Board's finding that,

nonetheless, there was no likelihood of confusion between the parties' marks thus necessitates the conclusion that it considered factor one—the similarity or dissimilarity of the marks—sufficient, on its own, to find no likelihood of confusion. This is enough for us to discern the Board's path to dismissal. *See In re Charger Ventures LLC*, 64 F.4th 1375, 1384 (Fed. Cir. 2023) ("We will, nevertheless, uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." (cleaned up)).

Arguing against this path to dismissal, Fuente separately contends the Board legally erred in giving dispositive weight to the dissimilarity of the marks under *DuPont* factor one and failing to give sufficient weight to the other factors favoring a likelihood of confusion. We are not convinced. The likelihood of confusion analysis is a balancing test, and a single *DuPont* factor "may be dispositive," especially where, like here, "that single factor is the dissimilarity of the marks." *Champagne Louis Roederer, S.A. v. Delicato Vineyards*, 148 F.3d 1373, 1375 (Fed. Cir. 1998). Therefore, even though all other relevant *DuPont* factors were deemed neutral or in Fuente's favor, the dissimilarity of the marks alone is a sufficient basis to conclude that no confusion was likely, especially given the Board's finding that the marks differed noticeably in sound, appearance, connotation, and commercial impression. *See Decision*, 2023 WL 11758750, at *17 ("Notwithstanding that part of the figure is in the shape of a letter X, a stick figure is a representation of a human being and so differs from a letter of the alphabet visually, and in connotation, and commercial impression."); *Odom's Tenn. Pride Sausage, Inc. v. FF Acquisition, L.L.C.*, 600 F.3d 1343, 1346–47 (Fed. Cir. 2010). We agree with the Board that the differences between the marks outweigh all other relevant *DuPont* factors.

## III

We have considered the parties' remaining arguments and find them unconvincing. The Board's factual findings are supported by substantial evidence, and Fuente fails to demonstrate harmful error in its legal conclusions. For the reasons above, we *affirm* the Board's decision.

**AFFIRMED**